UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

N⁰ 11-cv-228 (JFB) (GRB)

———————————

JOSE MEDINA,

Plaintiff,

VERSUS

NASSAU COUNTY SHERRIFF DEPARTMENT, NASSAU COUNTY MEDICAL CENTER STAFF,

Defendants.

———————————

**MEMORANDUM AND ORDER**
September 10, 2013

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Jose Medina ("Medina" or "plaintiff") brings this action against the Nassau County Sheriff's Department (the "County")[1] and the Nassau County Medical Center Staff alleging violations of Medina's constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, while incarcerated at the Nassau County Correctional Center ("NCCC"), medical personnel employed or utilized by the County misdiagnosed his kidney stones, causing him severe pain. Plaintiff also claims that correctional officers at the NCCC denied him medical attention for six hours while he was experiencing severe pain, difficulty breathing, and other symptoms associated with this condition.

The County now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that plaintiff failed to exhaust his administrative remedies.[2] For the reasons set forth below, summary judgment is properly granted in favor of the County

---

[1] Although plaintiff sues the "Nassau County Sherriff Department," the Court will refer to the defendant as the "Nassau County Sherriff's Department." Moreover, although plaintiff sues the Nassau County Sherriff's Department (a non-suable entity of the County of Nassau), the Court liberally construes the complaint to name the County of Nassau as the defendant.

[2] The County also moves for judgment on numerous other grounds. Specifically, the County argues that plaintiff's complaint should also be dismissed because: (1) the County is not liable for the actions of the Nassau County Medical Center Staff, and (2) plaintiff has failed to state a claim of deliberate indifference under the Eighth Amendment. However, these issues are moot in light of the Court's ruling that plaintiff has failed to exhaust his administrative remedies and, thus, the Court does not address them.

because of plaintiff's failure to exhaust his administrative remedies.[3]

I. BACKGROUND

A. Factual Background

1. The Medical Condition

The Court has taken the facts set forth below from the complaint, as well as the parties' affidavits, exhibits, and respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 (2d Cir. 2005).

Plaintiff was an inmate at NCCC from March 20, 2009 through January 13, 2011. (County 56.1 ¶ 2.) On October 3, 2010, plaintiff complained of "severe back pain, Rt. Flank pain" and difficulty urinating. (Decl. of Diane C. Petillo ("Petillo Decl.") Ex. D ("Inmate File") at 345.[4]) Plaintiff denied having kidney stones. (*Id.*) He was prescribed an antibiotic that was to be taken twice daily for ten days. (*Id.* at 279.) On October 25, 2010, plaintiff was again evaluated after the pain returned following the completion of the antibiotic. (*Id.* at 337.) An x-ray revealed a "tiny calcific density in L pelvic." (*Id.*) However, although it is unclear from the medical records, it appears that plaintiff was not prescribed any new medications or course of treatment.[5]

On December 2, 2010, plaintiff submitted a sick call request for pain in his lower back. (*Id.* at 325.) According to the complaint, at 1:00 A.M. on December 4, 2010, plaintiff notified correction officers of his severe back pain, as well as the fact that he was having difficulty breathing and running a fever. (Compl. at 4.) However, he was not given immediate medical attention. (*Id.*; *see also* Pl.'s Opp'n Ex. A, Statements from Inmates Noe Perdomo and Julian DeJesus, at 23-24.[6]) At 6:50 AM, plaintiff was seen in the medical unit and diagnosed with a UTI and a renal stone. (Inmate File at 325.) At 9:00 A.M., plaintiff passed out in his cell and was transported to Nassau University Medical Center. (*Id.* at 323.) Plaintiff remained in the hospital for four days. (*Id.* at 191.) Although the hospital records do not indicate what procedures were performed, subsequent documentation from the NCCC state that kidney stones were removed during plaintiff's hospitalization. (*Id.* at 317.)

---

[3] In addition, the Court *sua sponte* dismisses the complaint against the Nassau County Medical Center Staff. The United States Marshal's Service was unable to serve the Nassau County Medical Center Staff. (ECF No. 11.) In any event, under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court "shall" dismiss a case brought in forma pauperis "*at any time* if the court determines that . . . [the action] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). Because the Court finds that plaintiff has failed to exhaust his administrative remedies, plaintiff fails to state a claim; therefore, the complaint must be dismissed against all parties. Thus, the case against Nassau County Medical Center Staff is dismissed *sua sponte*. However, the case is dismissed without prejudice so that plaintiff may re-file a claim in (1) federal court if plaintiff is able to exhaust his administrative remedies, if that is even possible, or (2) in state court.

[4] Because the pages of plaintiff's inmate file are not numbered, the Court cites to the relevant Bates number stamped on each page of the exhibit.

[5] Plaintiff's 56.1 Statement argues that these facts are "unsupported by any of the referenced documentation" because the County failed to include the relevant pages from his medical records. (Pl.'s 56.1 ¶ 3.) The Court notes, however, that the County did include these pages within Exhibit D of Diane Petillo's Declaration. In any event, the information regarding plaintiff's medical treatment is irrelevant in deciding the County's motion for summary judgment because, as discussed *infra*, plaintiff failed to exhaust his administrative remedies.

[6] Because plaintiff's exhibit is not numbered, the Court cites to the page numbers automatically applied to the entire document by ECF.

2. The Grievance Procedure

Inmates at the NCCC have a formal grievance procedure available to them. Each inmate receives a copy of the Inmate Handbook upon entering the facility. (*See* Petillo Decl. Ex. E, Aff. of Keith Jorgensen ¶ 4.) The Inmate Handbook explains the grievance process available for all inmates to follow.

An inmate with a grievance may (but is not required to) attempt to resolve a grievance in an informal matter. If dissatisfied with this process, he may file a grievance form to be reviewed by the Grievance Coordinator. Grievances must be filed within five days of the incident giving rise to the grievance, although the time used attempting to resolve the problem informally does not count towards an inmate's five-day deadline. The Grievance Coordinator is required to make a written determination within five business days. If an inmate is dissatisfied with the determination, the inmate may appeal to the Chief Administration Officer. If the appeal results in an unfavorable decision, an inmate may appeal this determination to the State Commission of Correction. (*See* Petillo Decl. Ex. G, Nassau County Sherriff's Department Division of Corrections Policy and Procedures – Inmate Grievance Resolution Program, at 1-3.)

The policy provides: "Any grievance that is too vague to understand or fails to set forth supporting evidence or information may be returned to the inmate. Failure to supply sufficient information or evidence within two (2) days shall be cause to deny the grievance." (*Id.* at 2.)

In his complaint, plaintiff checked the box indicating that he filed a grievance with NCCC regarding this matter. (Compl. at 2.) However, plaintiff states: "I file a grievance and only got a pape[r] stating that I didn't have a lot to following on. Which is bogus!" (*Id.*) Plaintiff then states that he could not complete the grievance process "because they want me to give doc names time and date, this facility wouldn't allow me the information I need it!" (*Id.*) Plaintiff alleges that he could not get the necessary paper work because "they charge 150 a sheet which I don't have for my file." (*Id.*)

In his opposition to the motion for summary judgment, plaintiff argues that he did file a grievance and, despite his apparent admission in his complaint that he could not complete the formal grievance process, that "the allegation that Mr. Medina failed to pursue the matters advanced in the grievance are refuted and patently false." (Pl.'s 56.1 ¶ 13.) Plaintiff then claims that it was his December 11, 2009 grievance, not his 2010 grievance, which was returned for more information. (Pl.'s Opp'n at 5-6.) Plaintiff again asserts that it is inaccurate that the grievance is unexhausted. (*Id.* at 6.)

Plaintiff's grievance form, dated December 27, 2010, states that the medical staff failed to properly diagnose him "several time[s]" and ignored his medical issues. (Pl.'s Opp'n Ex. E.) The form does not note a decision by a Grievance Coordinator. The form does have the word "Return" written in the top-left corner. (*Id.*) The County states that the form was returned for clarification and that plaintiff failed to follow up with additional information; however, the County fails to submit any declarations to support that assertion. (County 56.1 ¶ 19.) Although plaintiff insists, in a conclusory fashion, that he properly exhausted this grievance, there is no evidence that plaintiff filed an appeal as required by NCCC regulations. Plaintiff filed this complaint just one week after submitting the initial grievance on December 27, 2010; in fact, plaintiff signed

3

the complaint in this action on December 30, 2010. (Compl. at 5.)

## B. Procedural Background

Plaintiff filed a complaint in this action on January 3, 2011. The County answered the complaint on March 10, 2011. The parties engaged in discovery for approximately sixteen months. On October 11, 2012, the County filed a motion for summary judgment. On December 21, 2012, plaintiff filed an opposition to the motion, and the County replied on January 14, 2013. The Court has fully considered all of the submissions of the parties.

## II. STANDARD OF REVIEW

The moving party bears the burden of establishing that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). This burden requires a movant to establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to do so, a party must support their position "by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court must "'view the evidence in the light most favorable to the party opposing summary judgment,'" and "'draw all reasonable inferences in favor of that party.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).

However, the Second Circuit has made clear that an inmate is not entitled to a jury trial on factual disputes regarding the failure to exhaust administrative remedies under the PLRA. *See Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011) (per curiam) (holding that there is no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA"); *Abdur-Rahman v. Terrell*, 10-CV-3092, 2012 WL 4472119, at *5 (E.D.N.Y. Sept. 25, 2012) ("Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact.").

## III. DISCUSSION

### A. Failure to Exhaust

The County argues that plaintiff is barred from bringing this claim in federal court because plaintiff has not exhausted his administrative remedies. For the reasons set forth below, the Court agrees.

#### 1. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize

4

the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings" *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) and *Woodford*, 548 U.S. at 88-90).

Prior to *Woodford*, the Second Circuit:

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, the Second Circuit has continued to hold post-*Woodford* that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d at 309 (citing the *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

5

### 2. Application

#### a. Proper Exhaustion

Although plaintiff seemingly admits in his complaint that he did not properly exhaust his administrative remedies because he did not have access to the necessary documentation, plaintiff argues in his opposition to the motion for summary judgment and the supporting documentation that his grievance was not returned to him for insufficient information, and that he did comply with the grievance procedures. However, the County has demonstrated that plaintiff did not properly exhaust his administrative remedies.

As stated *supra*, the Supreme Court has held that inmates must not simply inform institutions of their grievance, but that they must properly exhaust their administrative remedies. *See Woodford*, 548 U.S. at 90 (stating that "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). "The 'boundaries of proper exhaustion' are defined by the grievance requirements at the prison." *Simmons v. Cripps*, 12 CIV. 1061, 2013 WL 1285417, at *2 (S.D.N.Y. Mar. 28, 2013) (quoting *Bock*, 549 U.S. at 218).

The grievance procedure at NCCC specifically and clearly states that grievances that are "too vague to understand or fail[] to set forth supporting evidence or information may be returned to the inmate" and that the inmate must "supply sufficient information or evidence within two [] days" or the grievance may be denied. (Petillo Decl. Ex. G at 2.) As evidenced by both the word "Return" on the grievance and by plaintiff's admissions in his complaint, plaintiff's grievance was deemed insufficient and plaintiff was not able to supply the necessary information. Therefore, plaintiff failed to properly exhaust his administrative remedies when he failed to follow the grievance procedures of the NCCC. *See Mosley v. Johnson*, 09-CV-992, 2011 WL 2077804, at *4 (E.D. Va. May 23, 2011) (holding that plaintiff failed to exhaust his administrative remedies when his complaints "were not submitted in compliance with applicable [] procedural rules"), *aff'd*, 469 F. App'x 269 (4th Cir. 2012); *Smith v. Rodriguez*, 06-CV-521, 2007 WL 1768705, at *3 (W.D. Va. June 15, 2007) (Report and Recommendation) (plaintiff failed to exhaust administrative remedies when the "grievance form indicates that it was refused by intake and returned to her because she provided 'insufficient evidence,'" but plaintiff never appealed the refusal of her grievance).

In addition, even if plaintiff had submitted a proper grievance that was not returned to him, plaintiff's failure to appeal also requires dismissal of the action. *See Morrison v. Stefaniak*, 12-4111, 2013 WL 3214625, at *1 (2d Cir. June 27, 2013) (summary order) (upholding dismissal of complaint because plaintiff failed to appeal the Inmate Grievance Resolution Committee's decision); *Reynoso*, 238 F. App'x at 663-64 (same); *Valentine v. Lindsay*, 10-CV-868, 2011 WL 3648261, at *7 (E.D.N.Y. Aug. 17, 2011) (prisoner failed to exhaust his administrative remedies when he filed an untimely appeal regarding his grievance).

The Court also notes that, despite plaintiff's assertions in his opposition to the motion for summary judgment that he properly exhausted, it would have been impossible for plaintiff to properly exhaust based on the timing of his filing of the complaint. Plaintiff filed his grievance on December 27, 2010, and yet he signed the complaint in this action just three days later on December 30, 2010. There is simply no scenario in which plaintiff could have filed

his grievance, received a decision, filed an appeal to the Chief Administration Officer, received a decision, and filed another appeal to the State Commission of Correction in just three days.

Accordingly, the Court finds that plaintiff did not properly exhaust his administrative remedies as required by the PLRA.

b. Availability of Administrative Remedies

Construing the *pro se* plaintiff's complaint liberally, it appears plaintiff is arguing that the administrative grievance procedures were not "available" to him because prison officials denied him access to the information he needed to file a proper grievance. For the reasons set forth below, this argument is without merit.

The Second Circuit has stated that, if a prisoner has failed to exhaust, the Court must determine "whether administrative remedies were in fact 'available' to the prisoner . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop . . . the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill*, 380 F.3d at 686 (internal citations omitted).[7] Moreover, it is clear that "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (citations omitted); *see also Smith v. Woods*, No. 03-CV-480, 2006 WL 1133247, at *15 (N.D.N.Y. Apr. 24, 2006) (Report and Recommendation) ("[C]ase law exists supporting the proposition that, assuming plaintiff was instructed by prison officials, contrary to prison regulations, that he could not file a grievance, and plaintiff indeed did not initiate the grievance process by filing that grievance in reliance on that misrepresentation, the formal grievance proceeding required by the prison grievance system was never 'available' to plaintiff within the meaning of the PLRA." (internal alterations, citations, emphasis, and quotation marks omitted)).

In this case, plaintiff has not adequately alleged that the administrative grievance procedure was not "available" to him due to a misrepresentation by prison officials. *See Hemphill*, 380 F.3d at 686. Plaintiff alleges that he could not complete the grievance process because prison officials would not give him the medical information so that he could properly exhaust. Even crediting plaintiff's assertions, his belief that he could not obtain the necessary medical information is not a sufficient justification for his failure to exhaust. Plaintiff has not alleged that he was unaware of the appeals process, *see Ruggiero*, 467 F.3d at 178 (holding that inmate had not exhausted his administrative remedies when he did not claim "that he was unaware of the grievance procedures contained within [the Inmate Handbook] or that he did not understand those procedures"), or that he reasonably believed pursuing a grievance would be "futile or impossible" through the introduction of evidence regarding "prison officials' threats, beatings" or other misconduct, *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).

Plaintiff's situation is entirely distinguishable from those cases in which defendants were precluded from asserting this affirmative defense because prison

---

[7] The Second Circuit has noted that "the case law on the PLRA's exhaustion requirement does not always distinguish clearly between" these exceptions to the exhaustion requirement. *Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

officials denied an inmate access to grievance forms, *see Feliciano v. Goord*, 97 CIV. 263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998), or erroneously told him that a complaint could not be pursued through the normal grievance process, *see Williams v. Suffolk Cnty.*, 11-CV-5198, 2012 WL 6727160, at *5-6 (E.D.N.Y. Dec. 28, 2012). Prison officials did not engage in misconduct by requesting more information from plaintiff when his grievance form stated that he was misdiagnosed "several times" but did not list the specific medical conditions or dates for which he believes he received improper treatment. This information could have been provided by plaintiff without access to his detailed medical records. Even if the prison officials informed him that he needed to pay for his records, there is no indication that he was told that he could not appeal. Unlike when inmates are physically threatened or denied grievance forms, "a similarly situated individual of ordinary firmness" would have still deemed the grievance process available in plaintiff's situation. *Hemphill*, 380 F.3d at 688 (citation and internal quotation marks omitted).

Plaintiff has also made no plausible argument that special circumstances exist that warrant excusal from the requirement of proper exhaustion. "Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." *Winston v. Woodward*, 05 CIV. 3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008). Plaintiff has not even argued, let alone introduced any evidence, that a reasonable interpretation of the NCCC handbook would lead a prisoner to believe that he could immediately file a complaint in federal court, without attempting any appeals, when a grievance is returned for insufficient information but the plaintiff does not believe he can receive the required medical information from prison officials.

Accordingly, because a liberal reading of plaintiff's complaint and other submissions demonstrates that he did not exhaust his administrative remedies as required by the PLRA and that no reasonable explanation exists for his failure to do so, the County has met its burden in proving that this action should be dismissed.[8] However, plaintiff's complaint will be dismissed without prejudice. Plaintiff may re-file his pleadings after attempting to comply with the applicable exhaustion requirements, if that is still possible. *See Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001) ("We have recognized that failure to exhaust administrative remedies is usually a curable, procedural flaw that can be fixed by exhausting those remedies and then reinstituting the suit." (citation and internal quotation marks omitted)), *overruled in part on other grounds by Porter v. Nussle*, 534 U.S. at 516; *Bennett v. Wesley*, 11 CIV. 8715, 2013 WL 1798001, at *7 (S.D.N.Y. Apr. 29, 2013) ("Where, as here, a prisoner has failed to exhaust his available administrative remedies, the law is clear that the appropriate disposition of the unexhausted claims is dismissal without prejudice." (alteration, citation, and internal quotation marks omitted)). Plaintiff may also assert a state law claim in state court, if that is still possible.

---

[8] If there were disputed issues of material fact regarding plaintiff's failure to exhaust, the Court could hold a hearing before determining whether plaintiff did exhaust or whether he is excused from the PLRA's exhaustion requirements. However, even resolving all disputed issues of fact in plaintiff's favor, the County has met its burden of demonstrating that plaintiff did not properly exhaust his administrative remedies. Therefore, the Court does not believe a hearing on this issue is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the County's motion for summary judgment and *sua sponte* dismisses the complaint against Nassau County Medical Center Staff. However, the complaint is dismissed without prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 10, 2013
　　　　Central Islip, NY


\* \* \*


Plaintiff is proceeding *pro se*. The attorney for the County is Diane C. Petillo, Office of the Nassau County Attorney, One West Street, Mineola, NY 11501.